S09A2016. DEKALB COUNTY v. PERDUE et al.
(692 SE2d 331)

HUNSTEIN, Chief Justice.
Ten years after DeKalb County voters approved the imposition of a one-percent homestead option sales and use tax ("HOST") in the special tax district coterminous with the geographical boundary of DeKalb County, see OCGA § 48-8-102 (a), enacted pursuant to Art. IX, Sec. II, Par. VI, Ga. Const. 1983, the Legislature amended the Homestead Option Sales and Use Tax Act, OCGA § 48-8-100 et seq., so as to provide for changes in the manner in which HOST proceeds are distributed in those special HOST districts in which a "qualified municipality"[1] was thereafter created. See Ga. L. 2007, p. 598, § 1 et seq. (hereinafter "H.B. 264"). In 2008, the City of Dunwoody was created in DeKalb County. See Ga. L. 2008, p. 3536/S.B. 82. The creation of this qualified municipality activated the 2007 legislative

---

[1] A "qualified municipality" is a municipality "created on or after January 1, 2007, lying wholly within or partially within a county." OCGA § 48-8-101 (4).

changes H.B. 264 made to the HOST Act. DeKalb County filed suit in July 2008 against the State of Georgia, its governor and the Georgia Department of Revenue's commissioner seeking to enjoin those changes and to obtain a declaration that the pertinent H.B. 264 provisions in the HOST Act were unconstitutional. The trial court after a bench trial dismissed the State of Georgia as a party and ruled against DeKalb County as to the remaining defendants. This appeal ensued.

> 1. At the outset we recognize that "'all presumptions are in favor of the constitutionality of an act of the legislature' (cit.)," *Mayes v. Daniel*, 186 Ga. 345, 350 (1) (198 SE 535) (1938) and that "before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this (C)ourt must be 'clearly satisfied of its unconstitutionality.' (Cits.)" *City of Calhoun v. North Georgia Elec. &c. Corp.*, 233 Ga. 759, 760-761 (213 SE2d 596) (1975). Moreover, because statutes are "presumed to be constitutional until the contrary appears, . . . the burden is on the party alleging a statute to be unconstitutional to prove it." . . . *Dee v. Sweet*, 268 Ga. 346, 348 (1) (489 SE2d 823) (1997).

*Dev. Auth. of DeKalb County v. State of Ga.*, 286 Ga. 36, 38 (1) (684 SE2d 856) (2009).

2. Our review of the hearing transcript establishes, contrary to appellant's contention, that the trial court did not clearly err when it found as fact that H.B. 264 would not result in any gross tax increase to the unincorporated areas of DeKalb County. See generally OCGA § 9-11-52 (a).

3. Appellant argues that voter approval of HOST creates a binding obligation between voters and a county's governing authority in the same manner that voter approval of a special local option sales tax ("SPLOST") mandates the use of those funds for the projects designated in the resolution or ordinance calling for the imposition of the SPLOST. See OCGA § 48-8-111 (a) (1); *Johnstone v. Thompson*, 280 Ga. 611 (631 SE2d 650) (2006) (SPLOST referendum language meant school board could not abandon originally proposed uses for funds while those uses remained feasible of completion). Based on this argument, appellant asserts that, because the referendum question submitted to DeKalb County voters stated the funds raised by the HOST would be used "for county purposes," see OCGA § 48-8-103 (a) (setting forth required language for referendum question), those funds cannot be used for City of Dunwoody purposes without re-submitting the issue to DeKalb County voters.

We need not decide whether a referendum would ever be required should the Legislature want to change the purpose for the imposition of a HOST because it is clear that no change in purpose occurred at all as a result of H.B. 264. As the referendum language itself makes clear, the tax for which it sought voter approval is "within the special district within DeKalb County." That is because the HOST is not a "county tax" but a district tax levied to provide for services within that special district pursuant to the authority granted by Art. IX, Sec. II, Par. VI, Ga. Const. 1983 ("special districts may be created for the provision of local government services within such districts"). See also *City of Decatur v. DeKalb County*, 277 Ga. 292 (589 SE2d 561) (2003). Nothing in this constitutional paragraph or the HOST Act restricts the provision of local government services to the governing authority of the county whose geographical boundary is coterminous with that of the special district. See Division 7, infra. Hence, H.B. 264 did not change the purpose of the HOST approved by DeKalb County voters when it provided for the distribution of HOST proceeds to the governing authority of each qualified municipality located in the special district. See OCGA § 48-8-104 (d).

4. Relying on *Martin v. Ellis*, 242 Ga. 340 (249 SE2d 23) (1978), appellant contends that H.B. 264 violates Art. VII, Sec. I, Par. III (a), the uniformity taxation paragraph, in that, by mandating expenditures to the City of Dunwoody without the requirement of an intergovernmental agreement, the citizens of unincorporated De-Kalb County will be taxed at a higher rate than DeKalb County citizens living in the City of Dunwoody. Appellant's reliance on *Martin* is misplaced, however, as that case involved a differential rollback of county taxes that was *not* authorized by the special districts paragraph of our Constitution, Art. IX, Sec. II, Par. VI. That case is thus distinguishable for the same reasons set forth in *City of Decatur*, supra, 277 Ga. at 293 (distinguishing *City Council of Augusta v. Mangelly*, 243 Ga. 358 (254 SE2d 315) (1979), which was the second major lawsuit challenging the same act in issue in *Martin*). The trial court did not err by rejecting this contention.

5. Appellant next asserts that the trial court erred by holding that H.B. 264 is not the payment of a gratuity in violation of Art. III, Sec. VI, Par. VI (a) ("[e]xcept as otherwise provided in the Constitution . . . the General Assembly shall not have the power to grant any donation or gratuity"). Appellant argues that H.B. 264 obligates it to fund to the City of Dunwoody a certain mandated "equalization" portion of the HOST; that this payment is without benefit of an intergovernmental agreement; and that, because no consideration flows to appellant for the equalization payment to the City, the General Assembly is providing the City with a gratuity. This argument, however, fails to reflect the true nature of the statutory scheme set forth in the HOST

Act as amended by H.B. 264. As the new Code section to that Act expressly provides, it was the intent of the Legislature

> that the proceeds of the [HOST] be distributed equitably to the counties and qualified municipalities such that the residents of a new incorporated municipality will continue to receive a benefit from that tax substantially equal to the benefit they would have received if the area covered by the municipality had not incorporated.

OCGA § 48-8-101.1/H.B. 264, § 2 at Ga. L. 2007, p. 599. As provided in the HOST Act, the sales and use tax levied pursuant thereto is "exclusively administered and collected by the commissioner [of the Department of Revenue]." OCGA § 48-8-104 (a). The Act as amended then sets forth the formula to be used by the commissioner and the governing authority for the county in which a qualified municipality is located in order to calculate that qualified municipality's share of the capital outlay proceeds of the HOST. See OCGA § 48-8-104 (d), (e). Once that share of the capital outlay proceeds is calculated, the commissioner is directed to distribute that amount to the governing authority of each qualified municipality located in the special district, id. at (d) (1), and those proceeds "shall be expended for the purpose of funding capital outlay projects of such municipality." Id. As the trial court correctly recognized, under the HOST Act as amended, the City of Dunwoody, just like appellant, will act as an agent for the special tax district coterminous with the geographical boundaries of DeKalb County in expending HOST revenues for capital outlay projects that benefit the special tax district.[2] See *City of Decatur*, supra, 277 Ga. at 294, n. 1.

In interpreting our Constitution's gratuity paragraph, this Court has adopted the "ordinary definition of 'gratuity' as '(s)omething given freely or without recompense; a gift.'" (Footnote omitted.) *Garden Club of Ga. v. Shackelford*, 266 Ga. 24 (1) (463 SE2d 470) (1995). Because the equalization amount received by the City of Dunwoody as a qualified municipality within the DeKalb special tax

---

[2] Nothing in OCGA § 48-8-102 (a), creating special tax districts pursuant to Art. IX, Sec. II, Par. VI for purposes of the HOST Act, recognizes any special tax district other than the ones "correspond[ing] with and . . . conterminous with" the geographical boundaries of the 159 counties of this State. Thus, consistent with our duty to construe a statute in a manner which upholds it as constitutional if it is possible, *Cobb County School Dist. v. Barker*, 271 Ga. 35 (1) (518 SE2d 126) (1999), we decline to interpret OCGA § 48-8-104 (d) (1) as mandating that the HOST proceeds distributed to a qualified municipality be expended exclusively within that municipality's corporate boundaries in those situations where the qualified municipality's corporate boundaries are not coterminous with the geographical boundary of the county or counties in which it lies.

district clearly represents the share of HOST capital outlay proceeds the Legislature has determined the City's residents are entitled to receive, that share is not a gift in violation of Art. III, Sec. VI, Par. VI (a).

6. The trial court correctly held that H.B. 264 is not local legislation subject to the notice requirements of OCGA § 28-1-14. See also Art. III, Sec. V, Par. IX (General Assembly shall provide by law for advertisement of notice of intention to introduce local bills). *Fleming v. Daniell*, 221 Ga. 43 (142 SE2d 804) (1965), on which appellant relies, is factually inapposite. It involved legislative acts creating the office of assistant solicitor-general of the Coweta Judicial Circuit and fixing the compensation thereof. Those acts clearly involved local laws affecting only the specific counties comprising the Coweta Judicial Circuit; hence, because the acts were passed without compliance with the notice requirements, we held that they were null and void. Id. at 45. H.B. 264, in amending the HOST Act, is a general law as it applies in precisely the same way and without exception to every special tax district in the State that currently meets or may, in the future, meet its criteria. No compliance with the notice requirements of OCGA § 28-1-14 was therefore required.

7. Appellant contends the trial court erred by holding that H.B. 264 does not violate Art. IX, Sec. II, Par. VI of the 1983 Georgia Constitution, which authorizes the creation of special tax districts. Art. IX, Sec. II, Par. VI provides in pertinent part that

> special districts may be created for the provision of local government services within such districts; and fees, assessments, and taxes may be levied and collected within such districts to pay, wholly or partially, *the cost of providing such services therein* and to construct and maintain facilities therefor.

(Emphasis supplied.) We agree with appellant that a tax levied and collected within a special district pursuant to this paragraph can only be used for the cost of providing services within that district. However, we do not agree with appellant's argument, based on the emphasized language, that this paragraph requires that the entity levying the special district tax be the same one providing the services within the district, such that funds emanating from the HOST in this case may be used for services in that part of DeKalb County that is now within the corporate borders of the City of Dunwoody only when appellant and the City jointly so agree. Art. IX, Sec. II, Par. VI contains no language identifying any particular entity as the exclusive provider of local government services. In the absence of any

express language excluding any local government other than the entity levying the tax, we decline to construe that paragraph as containing such a limitation.[3]

8. Finally, appellant asserts that the Legislature by enacting H.B. 264 has preempted and violated the purpose for which DeKalb County voters approved the HOST. Clearly, the residents of DeKalb County, at the time they cast their votes in favor of the HOST, did not anticipate that the Legislature would thereafter change the distribution of the tax. Nor, despite the effect of H.B. 264, did the Legislature provide the residents of the only two counties that currently had HOSTs, DeKalb and Rockdale, the opportunity to reconsider their initial vote to impose the HOST before allowing the changes in H.B. 264 to be implemented. However, "[i]n determining constitutional questions, like others, the courts are not permitted to concern themselves with the wisdom of an act, . . . but are confined to settled principles of law under the long-established general rule . . . ." *Mayes v. Daniel*, supra, 186 Ga. at 350 (1). It was the Legislature's decision to amend the HOST Act so as to bypass the governing authority of DeKalb County and the intergovernmental agreement process in order to give a qualified municipality, e.g., the City of Dunwoody, HOST capital outlay funds directly. H.B. 264 is not unconstitutional or illegal for any of the reasons set forth by appellant.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 22, 2010.

*Roy E. Barnes, Lisa E. Chang, Allison B. Salter*, for appellant.
*Thurbert E. Baker, Attorney General, Warren R. Calvert, Senior Assistant Attorney General*, for appellees.

---

[3] Moreover, we note that Art. IX, Sec. II, Par. VI speaks in terms of taxes "levied *and* collected." (Emphasis supplied.) While appellant is the entity that levies the HOST here, it is the commissioner of the Department of Revenue exclusively who collects it. OCGA § 48-8-104 (a) (sales and use tax levied pursuant to HOST Act "shall be exclusively administered and collected by the commissioner"). Under appellant's interpretation of this paragraph, appellant could not alone provide any services within the district but could do so only together with the commissioner. We decline to interpret Art. IX, Sec. II, Par. VI in this fashion. See generally *Adams v. Hazelwood*, 271 Ga. 414 (2) (520 SE2d 896) (1999) (well-established rules of constitutional construction prohibit interpreting paragraph to reach absurd result).